# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 9, 2009          Decided July 24, 2009

No. 08-1132

GREGORY M. DEARLOVE,
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

———

On Petition for Review of an Order
of the Securities & Exchange Commission

———

*Benjamin M. Zuffranieri Jr.* argued the cause for petitioner. With him on the briefs were *Joseph V. Sedita*, *Michelle L. Merola*, and *Robert J. Fluskey Jr.*

*Tracey A. Hardin*, Senior Counsel, Securities & Exchange Commission, argued the cause for respondent. With her on the brief were *Brian G. Cartwright*, General Counsel, *Andrew N. Vollmer*, Deputy General Counsel, *Jacob H. Stillman*, Solicitor, and *Hope Hall Augustini*, Senior Litigation Counsel.

Before: GINSBURG and GRIFFITH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: Gregory Dearlove petitions for review of the decision of the Securities and Exchange Commission to debar him from practicing as an accountant before the SEC. The SEC concluded Dearlove engaged repeatedly in unreasonable conduct resulting in violations of applicable accounting principles and standards while serving as Deloitte & Touche's "engagement partner" in charge of the 2000 audit of Adelphia Communications Corporation. Dearlove argues the SEC committed an error of law, misapplied the applicable accounting principles and standards, and denied him due process. Because the SEC made no error of law, and substantial evidence supports its findings of fact, we deny the petition.

## I. Background

Deloitte audited Adelphia's financial statements from 1980 through 2002. An "engagement partner" had overall responsibility for each audit. In 2000 Deloitte rotated Dearlove onto the Adelphia account as the engagement partner, heading a team of 35 accountants.

John Rigas had founded Adelphia in 1952 and he and his children were the controlling shareholders in 2000. Dearlove and the Deloitte team described the 2000 audit, like many prior audits of Adelphia, as posing "much greater than normal risk" because Adelphia engaged in numerous transactions with subsidiaries and affiliated entities, many of which were owned by members of the Rigas family.

In 2000 Adelphia was one of the largest cable television companies in the United States. It had doubled the number of cable subscribers it served by acquiring several other cable

companies late in 1999. Although its assets were growing, Adelphia's debt grew substantially as well. The SEC found that prior to 2000:

> Adelphia, its subsidiaries, and some Rigas Entities entered as co-borrowers into a series of credit agreements. By 1999, Adelphia and the Rigas Entities had obtained $1.05 billion in credit; in 2000, they tripled their available credit and drew down essentially all of the funds available under the agreements.

*In the Matter of Gregory M. Dearlove, CPA*, No 3-12064, 2008 SEC LEXIS 223, at *5 (Jan. 31, 2008).

Deloitte issued its 2000 independent auditor's report of Adelphia — signed by Dearlove — on March 29, 2001. *Id.* at *10. In January 2002, in the wake of the Enron scandal, the SEC released a statement regarding the disclosure of related party transactions. *Id*. at *10-11; *see Statement About Management's Discussion and Analysis of Financial Condition and Results of Operations*, 67 Fed. Reg. 3,746 (Jan. 25, 2002). In March Adelphia disclosed its obligations as co-debtor with the Rigas Entities. Its share price declined from $30 in January 2002 to $0.30 in June, when it was de-listed by the NASDAQ. *Dearlove,* 2008 SEC LEXIS 223, at *11. In September 2002 the Department of Justice brought criminal fraud charges against Adelphia officials, including members of the Rigas family, *see United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007), and Adelphia agreed to pay $715 million into a victims' restitution fund as part of a settlement with the Government, *In re Adelphia Commc'ns Corp*., 327 B.R. 143 (Bankr. S.D.N.Y. 2005). *Dearlove,* 2008 SEC LEXIS 223, at *12.

In April 2005 the SEC brought and settled civil actions against Adelphia, members of the Rigas family, and Deloitte. *Id.* at \*13-14. In September 2005 the SEC charged Dearlove with improper conduct resulting in a violation of applicable professional standards, including his approval of Adelphia's method of accounting for transactions between itself and one or more Rigas Entities, *i.e.*, related party transactions. The matter was referred to an Administrative Law Judge, who determined Dearlove had engaged in one instance of "highly unreasonable" conduct and repeated instances of "unreasonable" conduct, and permanently denied Dearlove the right to practice before the SEC. Upon review of the ALJ's decision, the SEC held Dearlove had engaged only in repeated instances of "unreasonable" conduct and denied him the right to practice before the SEC but provided he may apply for reinstatement after four years. Dearlove petitions for review of that decision.

## II. Analysis

SEC Rule 102(e) provides the SEC may "deny, temporarily or permanently, the privilege of appearing or practicing before [the SEC] in any way to any person who is found by the Commission ... to have engaged in unethical or improper professional conduct." 17 C.F.R. § 201.102(e)(1)(ii). The Rule defines three classes of "improper professional conduct" for accountants: (1) "Intentional or knowing conduct, including reckless conduct, that results in a violation of applicable professional standards," *id.* § 201.102(e)(1)(iv)(A); (2) "A single instance of highly unreasonable conduct that results in a violation of applicable professional standards," *id.* § 201.102(e)(1)(iv)(B)(1); and (3) "Repeated instances of unreasonable conduct, each resulting in a violation of applicable professional standards, that indicate a lack of

competence to practice before the Commission," *id.* § 201.102(e)(1)(iv)(B)(2).  The only issue here is the validity of the SEC's determination that Dearlove repeatedly engaged in unreasonable conduct.

The "applicable professional standards" referred to in Rule 102(e) include both the Generally Accepted Auditing Standards (GAAS) and the Generally Accepted Accounting Principles (GAAP).  *See Amendment to Rule 102(e) of the Commission's Rules of Practice*, 63 Fed. Reg. 57,164, 57,166/3 (Oct. 26, 1998).  The GAAS are "approved and adopted by the membership of the American Institute of Certified Public Accountants," AICPA Codification of Statements of Auditing Standards § 150.02, and concern "the quality of the performance ... [and of] the judgment exercised by" an auditor, *id*. § 150.01.  The GAAS require an auditor to have adequate training and audit proficiency, to maintain independence from the company being audited, and to exercise due professional care.  *Dearlove*, 2008 SEC LEXIS 223, at *16-17.  The GAAS also set forth an auditor's obligation to plan, supervise, and gather evidence in conducting an audit.  *Id.*  In contrast, the GAAP focus not upon an auditor's judgment but upon how specific accounting tasks should be performed.  *See, e.g.*, Interpretation No. 39 of the FASB, ¶5 ("[I]t is a general principle of accounting that the offsetting of assets and liabilities in the balance sheet is improper except where a right or setoff exists").  The GAAP include statements published by the Federal Accounting Standards Advisory Board and by the AICPA.

Dearlove argues that in order to establish his conduct was unreasonable within the meaning of Rule 102(e)(1)(iv)(B)(2), the SEC had to hold he violated the common law negligence standard of care, as evidenced by expert testimony.  He

further argues he was denied due process because the ALJ refused to postpone the hearing for 60 days.

The SEC's findings of fact are conclusive if supported by substantial evidence. 15 U.S.C. § 78y(a)(4); *Steadman v. SEC*, 450 U.S. 91, 96 n.12 (1981). We may not set aside the SEC's legal conclusions unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Nat'l Rural Elec. Coop. Ass'n v. SEC*, 276 F.3d 609, 614 (D.C. Cir. 2002).

We reject Dearlove's legal argument and conclude the appropriate standard of care in this case is supplied by the GAAS; therefore, the SEC need not have received expert testimony to establish the standard of care or to determine whether Dearlove's conduct was unreasonable. Moreover, we find ample evidence in the record to support the SEC's conclusion that Dearlove engaged in repeated instances of unreasonable conduct that resulted in a violation of professional standards. We also reject Dearlove's argument that he was denied due process.

A.   Rule 102(e)

This is not the first time we have encountered the application of Rule 102(e) to an accountant, but it is the first time we have reviewed a decision of the Commission sanctioning an accountant's conduct as merely "unreasonable." In *Checkosky v. SEC*, 139 F.3d 221 (1998) (*Checkosky II*), we were concerned about the SEC's equivocation as to whether it could find improper professional conduct where an accountant had acted negligently rather than recklessly or with the intent to defraud. *Id.* at 223-24. Because it was unclear whether simple negligence could support a violation of Rule 102(e) and, considering the SEC's

"failure to articulate a discernible standard," we instructed the Commission to dismiss the proceedings under review. *Id.* at 227. The SEC no longer has the problem we identified in *Checkosky II*; the SEC amended Rule 102(e) to make clear that an accountant need not have engaged in intentional, knowing, or reckless conduct to be in violation of the Rule. 63 Fed. Reg. 57,164 (Oct. 26, 1998).

Dearlove draws our attention to two elements of Rule 102(e)(1)(iv)(B)(2): "Repeated instances of unreasonable conduct" and "each resulting in a violation of applicable professional standards." He argues that to conclude one has violated the Rule, the SEC must determine not only that he violated applicable professional standards but also that his conduct was "unreasonable." Because "one of GAAS's General Standards is that due professional care is to be exercised in the performance of the audit and the preparation of the report," *Checkosky II*, 139 F.3d at 225 n.5 (internal quotation marks omitted), Dearlove contends "unreasonable" conduct must mean something other than conduct below the standard of due professional care set forth in the GAAS. For support, he points to New York Pattern Jury Instructions § 2:25, which states:

> A person who has special training and experience in a trade, when acting in the trade on behalf of others who are relying on his special skills, has the duty to use the same degree of skill and care that others in the same trade in the community would reasonably use in the same situation.

From this, Dearlove reasons that to show he failed to use a reasonable degree of skill and care in auditing Adelphia, the SEC would have had to elicit expert testimony that his

conduct was unreasonable under the circumstances. Moreover, Dearlove argues the audit reports of his predecessors at Deloitte — whose audits were similar to his own — indicate his conduct was reasonable under the circumstances.

The SEC rejected Dearlove's argument, observing about the GAAS (at p.9):

> AICPA membership approved and adopted the ten fundamental auditing standards .... AICPA's Auditing Standards Board has developed and issued subsequent auditing standards through a due process that includes deliberation in meetings open to the public, public exposure of proposed standards, and a formal vote .... We therefore decline to create a separate standard of professional conduct for auditors that depends in each case on the behavior of a particular auditor's predecessors. The accounting profession itself has already prescribed the applicable standards.

We agree. All violations of the Rule, whether by intentional, knowing, highly unreasonable, or merely unreasonable conduct, are also violations of the GAAS; the term "unreasonable" as used in the Rule serves only to distinguish among degrees of deviation.[*] Therefore, the SEC

---

[*] As we have noted before, "the converse — that all deviations from the GAAS are *per se* [unreasonable] — might not be true." *Checkosky II*, 139 F.3d at 225 n.5. In other words, Rule 102(e) does not require the SEC to hold every violation of the GAAS amounts to improper professional conduct.

need not establish a standard of care separate from the GAAS in order to give meaning to Rule 102(e)(1)(iv)(B)(2). The Rule simply requires the SEC to engage in an objective inquiry whether Dearlove's conduct was unreasonable in the specific factual circumstances at issue. Prior audits involving similar treatment of similar transactions may serve as evidence that a particular audit was not unreasonable, but the SEC is entitled to weigh that evidence along with other record evidence to determine, in its own expert view, whether the conduct at issue was unreasonable.

Among the conduct the SEC deemed unreasonable was Dearlove's approval of Adelphia's practice of netting an account receivable from one Rigas Entity against an account payable to another Rigas Entity. Thus, if Adelphia was owed $1 million by one Rigas Entity and itself owed $1.1 million to another Rigas Entity, then, rather than report both transactions, its balance sheet would show only the net $0.1 million payable. In 2000 Adelphia's aggregate accounts receivable from and aggregate accounts payable to Rigas Entities were each more than $1 billion, but Adelphia's balance sheet showed only a "Related Party Receivable" of about $3 million. *Dearlove*, 2008 SEC LEXIS 223, at *25.

Dearlove explained his approval of Adelphia's netting by pointing out that prior Deloitte engagement partners had done the same. The SEC (at p.14) held reliance upon prior audits was unreasonable, particularly in light of changed circumstances

> because this audit generally called for heightened skepticism and because this account, in particular, involved related party transactions and a precipitous drop in the amount of net receivables that Adelphia

reported compared to prior years. Moreover, Dearlove's unquestioning reliance on prior audit conclusions is precisely the result that audit partner rotation was designed to remedy.

Having determined Dearlove's conduct was unreasonable, the SEC turned to the applicable professional standards. The GAAS required that when an audit posed greater than normal risk — as Dearlove had determined the Adelphia audit did — there must be "more extensive supervision by the auditor with final responsibility for the engagement during both the planning and conduct of the engagement." AICPA Clarification § 312.17. The SEC found "no evidence, in the audit workpapers or elsewhere in the record, that Dearlove gave any consideration to the propriety of Adelphia's netting during the 2000 audit or that the audit team conducted any analysis" of the accounting requirement at issue. *Dearlove*, 2008 SEC LEXIS 223, at *32. As a consequence, the SEC held Dearlove violated the GAAS.

Turning to the GAAP, Interpretation No. 39 of the FASB provides a party may use a credit to offset a debt on its balance sheet only when (1) each of two parties owes the other a determinable amount; (2) the reporting party has the right to set off the amount owed against the amount owed by the other party; (3) the reporting party intends to set off; and (4) the right to set off is enforceable at law. FIN 39 ¶5. The SEC held Adelphia violated the GAAP because its netting involved more than two parties: "Adelphia netted the accounts payable and receivable of its various subsidiaries against the accounts payable and receivable of various Rigas Entities on a global basis ... [and] netting is appropriate only when two parties are involved." *Dearlove*, 2008 SEC LEXIS 223, at *27.

The two-party rule makes the reporting party's balance sheet a more accurate depiction of its financial heath by preventing the reporting party from using the amount it owes one entity to hide the amount it is owed by another that may be less than creditworthy. Netting a receivable unlikely to be paid against a debt owed to another party is simply a way to make the debt and the dubious receivable disappear from the reporting party's balance sheet — and that is just what Adelphia did in 2000. In his defense, Dearlove asserts that "variations in the ownership structures of the Rigas Entities did not alter the fact that the Rigas family controlled those entities." This rather innocuous observation addresses neither the letter nor the purpose of the two-party rule.

It is therefore clear the SEC analyzed the record as required by Rule 102(e)(1)(iv)(B)(2): It determined first that Dearlove's conduct was unreasonable in the circumstances and second that it resulted in a violation of professional standards — both the GAAS and the GAAP. Because the GAAS focus upon an auditor's performance and require him to exercise due professional care, we reject Dearlove's attempt to fault the SEC for marshaling the same evidence to show his conduct was unreasonable and that he failed to exercise due professional care in performing the audit.[*]

---

[*] In addition to holding Dearlove violated Rule 102(e) by netting Adelphia's accounts receivable from and accounts payable to various Rigas Entities, the SEC held he violated the Rule in the way he (1) accounted for debt co-borrowed by Adelphia and the Rigas Entities, (2) accounted for debt owed by Adelphia to a third party as debt owed by a Rigas Entity to a third party, and (3) classified certain debt transactions between Adelphia and Rigas Entities as stock sales. Dearlove argues this conduct did not violate the GAAS or lead to a violation of the GAAP but his arguments are

## B. Due Process of Law

Dearlove asked the ALJ and then the SEC to postpone his hearing for 60 days lest he have only four months in which to review a massive record — compiled by the SEC over several years of investigation — and to prepare for the hearing. Dearlove now argues the Commission denied him due process by forcing him to prepare for the hearing in too short a period of time.

"The SEC, like a trial judge, enjoys broad discretion in deciding whether to grant a continuance." *Falcon Trading Group v. SEC*, 102 F.3d 579, 581 (D.C. Cir. 1996); *cf. Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) ("The matter of continuance is traditionally within the discretion of the trial judge"). And the Commission has a "policy of strongly disfavoring ... requests" for postponement. 17 C.F.R. § 201.161(b)(1).

That policy operates within the framework of a rule requiring the Commission or an ALJ, in evaluating a request for postponement, to consider and weigh five factors:

> (i) The length of the proceeding to date; (ii) The number of postponements ... already granted; (iii) The stage of the proceedings at the time of the request; (iv) The impact of the request on the hearing officer's ability to complete the proceeding in the time specified

---

unconvincing for much the same reasons as those discussed above and do not warrant separate treatment in this opinion.

by the Commission; and (v) Any other such matters as justice may require.

*Id.*

Dearlove argues the ALJ erred by treating the time specified by the Commission to complete the proceeding as mandatory, when in fact he could have extended the deadline. The SEC rejected this argument because it found the ALJ considered the time limit as but one of the required five factors. Our review of the ALJ's Order confirms the SEC's decision: The ALJ considered each of the five factors specified in the rules and treated none as dispositive. Considering the broad discretion the agency has in ordering the conduct of its proceedings, *see Falcon Trading Group*, *supra*, we reject Dearlove's due process argument.

## III.  Conclusion

In sum, we reject Dearlove's contention that Rule 102(e)(1)(iv)(B)(2) required the SEC to evaluate his conduct of the 2000 Adelphia audit against the common law negligence standard; the GAAS supplied the applicable standard and did not require the SEC to elicit expert testimony that an accountant's conduct was unreasonable under the circumstances.  Here the record evidence supports the SEC's conclusions that Dearlove's conduct was unreasonable and that he was not denied due process.  The petition for review is therefore

*Denied.*