**FALCON TRADING GROUP, LTD.**
and Glen T. Vittor, Petitioners

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

No. 96–1052.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 4, 1996.

Decided Dec. 20, 1996.

Thomas J. McGonigle, Washington, DC, argued the cause for the petitioners. Wallace L. Timmeny and Erica S. Palim, Washington, DC, were on brief.

Jacob H. Stillman, Associate General Counsel, Securities and Exchange Commission, Washington, DC, argued the cause for the respondent. Paul Gonson, Solicitor, Richard H. Walker, General Counsel, Randall W. Quinn, Senior Litigation Counsel, and Allan A. Capute, Special Counsel to the Solicitor, were on brief. Leslie E. Smith, Senior Litigation Counsel, Washington, DC, entered an appearance.

Before: EDWARDS, Chief Judge, SILBERMAN and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The petitioners challenge a decision of the Securities and Exchange Commission (SEC or Commission) imposing sanctions on them for violating the Rules of Fair Practice

(Rules) of the National Association of Securities Dealers (NASD). Both petitioners contend that (1) they were deprived of their right to counsel because their lawyers were not afforded sufficient time to prepare for their NASD hearing and (2) the SEC's decision was unlawfully issued by less than a quorum of the Commission. We hold that the SEC acted within its discretion in denying the petitioners' motions for continuance and adjournment, without violating their right to counsel, and that its decision was lawfully rendered by a quorum of the Commission as defined by its regulations.

On February 22, 1994, after a substantial investigation, NASD's Market Surveillance Committee (MSC) filed a complaint charging Falcon Trading Group Ltd. (Falcon) and its president Glen T. Vittor with refusing to honor two commitments to purchase large blocks of stock in violation of article iii, section 1 of the NASD Rules. The MSC also charged Falcon and Vittor with allowing Philip Gurian, whose NASD registration had previously been revoked, to participate in trades on Falcon's behalf in violation of the same section and of NASD's interpretation of article v, section 1 of the NASD Rules. The complaint further charged Gurian with failing to appear as requested during the NASD investigation in violation of article iv, section 5 and article iii, section 1 of the NASD Rules.

On March 8, 1994, MSC issued a "Notice of Hearing" to be held on April 25, 1994 in Fort Lauderdale, Florida, the location requested by Leonard H. Bloom, counsel for the respondents below. On March 17, 1994 NASD wrote Bloom "to confirm ... conversations during the week of March 7, wherein you informed me of your availability for the hearing set to commence April 25, 1994." Joint Appendix (JA) 47.

Some six weeks before the hearing date, during settlement negotiations, Bloom determined that Falcon's interests were in conflict with Vittor's and Gurian's and that he therefore could not represent all three clients. On March 30, 1994, Ira Lee Sorkin notified MSC that he was assuming representation of the two individual respondents and requested an adjournment until July 11, 1994 because of scheduling conflicts and the "need for time to

familiarize [him]self with the facts at issue." JA 56. By letter dated April 7, 1994 the NASD staff expressed opposition to any postponement and on April 11, 1994 Sorkin filed a motion for adjournment with the MSC hearing panel, again citing other commitments and the need for additional preparation time. By letter dated April 15, 1994, Sorkin was informed that the motion had been denied.

On April 18, 1994 Sorkin filed another motion for adjournment, this time until June 6, 1991, or, in the alternative, for 30 days to obtain new counsel for his clients, stating "I cannot adequately represent my clients in the absence of an adjournment for the simple fact that I will have no time to prepare." JA 92. The same day Bloom filed a motion for continuance or, alternatively, for 45 days to allow Falcon to retain new counsel, asserting he would be "unable to devote the time required during this week to prepare for the hearing now scheduled on April 25 and 26, 1994," because his wife had broken her leg the day before and because he himself was scheduled for surgery on April 23, 1994. JA 95. He further informed NASD that in the event of a denial his firm "w[ould] be unable to effectively represent its client and therefore [would have] no alternative but to withdraw." JA 95–96. Both motions were denied on April 19, 1994 and Bloom immediately withdrew with Falcon's consent.

On April 20, 1994 Vittor as Falcon's president filed an "emergency motion" on its behalf, seeking a 45–day adjournment because of Bloom's withdrawal and its need to find new counsel. JA 101. The same day Sorkin, through his associate Philip Raible, filed a motion for an "emergency continuance" until June 6 or, alternatively, for time for his clients to retain new counsel, citing his previous motions and supporting materials. The motion also asserted: "In the event this matter is not settled, this firm cannot adequately represent its clients for the simple fact that there has been no time to prepare." JA 111. On April 25, 1994, NASD's "National Business Conduct Committee" (NBCC) denied Sorkin's motion "as interlocutory." JA 155.

Apparently, no official action was taken on Falcon's motion.

The hearing began, as scheduled, on April 25. Raible, Sorkin's associate, attended and immediately requested a continuance "for a short period of time to enable us to prepare for and attend a hearing which will result in a full and fair disclosure of the facts, and at which principles of due process will obtain." JA 171. The MSC hearing panel denied the motion on the ground that "the respondents and others involved have had plenty of opportunity to prepare," given the "fairly straightforward" nature of the evidence and the "timely" denial of the earlier motions. JA 175–76. Raible then asked for "a minute to pack up," consulted briefly with his clients and left. JA 176. The hearing proceeded with none of the respondents represented by counsel.

On June 27, MSC issued a decision finding the three respondents had violated the NASD Rules as charged in the complaint and sanctioning Falcon and Vittor with censures, suspensions and fines. The decision also explained that MSC's "determination to proceed" with the April 25 hearing was "the result of [its] consideration of the unjustifiable aspects of Respondents' requests in the context of the (i) serious and repetitive nature of the violations alleged, (ii) the relative simplicity of the issues involved, (iii) the prior confirmations of the hearing date, (iv) the ample notice provided to Respondents, and (v) the potential for precedent contrary to the public interest." JA 908. All three respondents below appealed MSC's decision to NBCC. On March 1, 1995, NBCC affirmed the findings of rule violations in their entirety but reduced the sanctions. Falcon and Vittor appealed to the SEC. By opinion and order issued December 21, 1995 the SEC, with only two Commissioners then in office, sustained the NBCC decision in all respects. Vittor and Falcon have petitioned the court for review of· the SEC's decision on two grounds.

First, the petitioners argue they were deprived of the right to counsel by NASD's denial, upheld by the SEC, of the motions for adjournment and continuance. We find no such deprivation.

The SEC, like a trial judge, enjoys broad discretion in deciding whether to grant a continuance. *Markowski v. SEC*, 34 F.3d 99, 105 (2d Cir.1994) (citing *Morris v. Slappy*, 461 U.S. 1, 12, 103 S.Ct. 1610, 1616–17, 75 L.Ed.2d 610 (1983)); *Richard W. Suter*, 47 S.E.C. 951, 963 (1983). Therefore, " 'only an unreasoning and arbitrary insistence upon expeditiousness in the face of a· justifiable request for delay violates the right to the assistance of counsel.' " *Suter*, 47 S.E.C. at 963 (quoting *Morris v. Slappy*, 461 U.S. at 11, 103 S.Ct. at 1616). That was not the case here. NASD had good reason to proceed with the hearing. To accommodate the petitioners' choice of hearing site MSC staff, hearing panel members and witnesses were required to travel to Florida from various parts of the country. · Postponement would have required that they cancel their plans and rearrange their schedules accordingly. On the other side, the petitioners have demonstrated no real need for additional time justifying continuance. Neither the facts nor the law involved was complicated. Bloom, who began representing the respondents below as early as November 1993, had more than enough time to master both before the scheduled hearing date.[1] Sorkin too had ample time to prepare. He was engaged to represent petitioner Vittor more than three weeks before the hearing and at that time both he and Vittor were aware of the scheduled hearing date. He thus had substantially more than the ten-day notice that the NASD rules require for such proceedings. *See* JA 1118; NASD Manual (CCH) ¶ 3024 (1995). If previous commitments prevented him (or his associate, Raible, who subsequently participated in settlement negotiations and attended the hearing) from mounting an adequate defense or attending the scheduled hearing he should not have undertaken to represent Vittor. For his part Vittor, who was aware of Sorkin's misgivings, should have sought other counsel. Instead both simply sat by as the date drew nearer in the apparent hope that NASD would change its mind or its decision would be overturned by

---

**1.** Bloom never represented that he was *unable* to attend the April 25 hearing.

the SEC or this court. Under the circumstances, we cannot say that NASD abused its discretion in holding the hearing as scheduled. *Cf. Richard W. Suter*, 27 S.E.C. 951, 962–63 (1983) (no abuse of discretion in denying continuance where party was given from February 12, 1981 to March 16, 1981 to engage new counsel).

The petitioners next assert that the SEC opinion and order are invalid because issued by less than a quorum of the five-member Commission. In March 1995 the three members of the SEC then in office promulgated a "quorum rule" which provides:

> A quorum of the Commission shall consist of three members; provided, however, that if the number of Commissioners in office is less than three, a quorum shall consist of the number of members in office; and provided further that on any matter of business as to which the number of members in office, minus the number of members who either have disqualified themselves from consideration of such matter pursuant to § 200.60 or are otherwise disqualified from such consideration, is two, two members shall constitute a quorum for purposes of such matter.

17 C.F.R. § 200.41. The petitioners do not dispute that this regulation authorizes a two-member quorum where, as here, only two members are on the Commission. They contend, however, that the Commission was without authority to promulgate the rule. We disagree.

 If not otherwise constrained by statute, an agency sufficiently empowered by its enabling legislation may create its own quorum rule. *See LaPeyre v. FTC*, 366 F.2d 117, 122 (5th Cir.1966) (FTC's quorum rule "is within the Commission's power to make

and is wholly valid"); *cf. Earnest v. Moseley*, 426 F.2d 466, 469 (10th Cir.1970) (8-member Federal Parole Board had authority to delegate board revocation decisions to 3-member panel because "[t]he creation of the Board and Congress' vesting in it a very broad discretion carries with it an inherent authority to establish such procedures as will best effectuate Congress' purpose in establishing the Board and the parole system").[2] In the case of the SEC, Congress has specifically bestowed on the Commission "power to make such rules and regulations as may be necessary or appropriate to implement the provisions of this chapter for which they are responsible or for the execution of the functions vested in them by this chapter." 15 U.S.C. § 78w(a)(1). This broad grant must be read to include authority to determine how many members constitute a quorum of the Commission, as we have suggested in the past. *See Gearhart & Otis, Inc. v. SEC*, 348 F.2d 798, 802 (D.C.Cir.1965) (citing SEC's own ruling for proposition that at that time "[t]hree members of the five-member Commission constitute[d] a quorum"). Because that authority is not countermanded elsewhere by Congress, as for example in an explicit statutory quorum provision, we conclude that the SEC's quorum rule and the opinion and order issued pursuant to it are lawful.[3]

For the preceding reasons, the petition for review is

*Denied.*

---

**2.** The Supreme Court implicitly acknowledged this principle in *FTC v. Flotill Prods., Inc.*, 389 U.S. 179, 183, 88 S.Ct. 401, 404, 19 L.Ed.2d 398 (1967), when the Court concluded that "[w]here the enabling statute is silent on the question," a collective body *"is justified* in adhering to [the] common-law rule" that "a majority of a quorum constituted of a simple majority of a collective body is empowered to act for the body." 389 U.S. at 183, 88 S.Ct. at 404 (emphasis added). The Court did not, as the petitioners contend, *require* that an agency adopt the common-law rule, which in any event may very well permit a

quorum made up of a majority of those members of a body *in office* at the time. *See, e.g., Lee v. Board of Educ.*, 181 Conn. 69, 434 A.2d 333, 340–41 (1980); *Swedback v. Olson*, 107 Minn. 420, 120 N.W. 753 (1909).

**3.** The rule was also prudent given that at the time it was promulgated the Commission consisted of only three members and was contemplating the prospect it might be reduced to two. *See* Establishment of Commission Quorum Requirement, 60 Fed.Reg. 17,201 (April 5, 1995).