# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 4, 2008          Decided May 1, 2009

No. 08-1162

LAUREL BAYE HEALTHCARE OF LAKE LANIER, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

Consolidated with 08-1214

On Petition for Review
and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

*Charles P. Roberts, III*, argued the cause for petitioner. With him on the briefs was *Clifford H. Nelson, Jr.*

*James B. Coppess* argued on the cause for intervenor. With him on the brief was *James D. Fagan, Jr.*

*Ruth E. Burdick*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Julie Broido*, Supervisory Attorney, and *Jacob Frisch*, Attorney. *Ronald Meisburg,* General Counsel, *John E. Higgins, Jr.*, Deputy General Counsel, *John H. Ferguson*, Associate General Counsel, and *Linda Dreeben*, Deputy Associate General Counsel also entered an appearance.

Before: SENTELLE, *Chief Judge*, TATEL, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Laurel Baye Healthcare of Lake Lanier, Inc. petitions for review of an order of the National Labor Relations Board finding that Laurel Baye engaged in unlawful labor practices, and imposing a remedy. The Board cross-petitions for enforcement of the order. Unlike the typical petition for review of an NLRB order, Laurel Baye does not advance allegations of error in the Board's findings, conclusions, or remedies, but rather challenges the authority of the Board to enter the order at all, as the Board had only two members and therefore did not meet the statutory Board quorum requirement of three members. The Board argues that because the Board itself had earlier delegated all of its authority to a three-member panel of which the two remaining Board members constituted a quorum, that quorum of the delegee panel had the authority to enter the order. Because we agree with Laurel Baye that the Board's purported order was beyond its lawful authority, we rule that the purported order is without force, deny the Board's cross-petition for enforcement, and remand the matter for further proceedings before the Board at such time as it may once again consist of sufficient members to constitute a quorum.

## I.  BACKGROUND

### A.  Legal Background

The National Labor Relations Act (NLRA), now codified as 29 U.S.C. §§ 151–169 (2008), originally provided that the National Labor Relations Board (Board) would consist of three members.  *See* Act of July 5, 1935, ch. 372, § 3(a), 49 Stat. 449, 451 (amended 1947).  As subsequently amended and at all times relevant to the current proceeding, the NLRA provides that "the Board shall consist of five instead of three members."  29 U.S.C. § 153(a).  Section 3(b) of the NLRA states, in relevant part, that:

> The Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise. . . .  A vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board, and three members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum of any group designated pursuant to the first sentence hereof.

29 U.S.C. § 153(b).

This section encompasses four provisions.  First, the delegation provision states that "[t]he Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise."  *Id.*  Second, the vacancy provision provides that "[a] vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board."  *Id.*  Third, the Board quorum provision states that "three members of the Board shall, at all times, constitute a quorum of the Board."  *Id.*  Finally, the delegee

group quorum provision states that "two members shall constitute a quorum of any [three-member] group [to which the Board delegated its powers pursuant to the delegation provision.]" *Id.*

B.   Factual Background

This case arises out of unfair labor practice charges brought in 2005 by Intervenor, United Food and Commercial Workers Union Local 1996 (United), and the General Counsel of the Board against Petitioner Laurel Baye Healthcare of Lake Lanier, Inc. (Laurel Baye).   On July 12, 2006, after a hearing, an administrative law judge issued a proposed decision and order concluding that Laurel Baye had committed violations of sections 8(a)(1) and (a)(5) of the NLRA.   Laurel Baye filed with the Board exceptions to the ALJ's decision, which the Board accepted on September 7, 2006.

Between the time that the ALJ issued his decision and the time that the Board took up review of Laurel Baye's exceptions to the decision the previously-five-member Board underwent a series of dramatic personnel changes.   On December 16, 2007, Board Chairman Robert J. Battista's term expired, leaving four members on the Board.   On December 20, 2007, the remaining four members of the Board (Wilma Liebman, Peter Schaumber, Peter Kirsanow, and Dennis Walsh) unanimously voted to delegate all of its powers to a three-member group consisting of Board members Liebman, Schaumber and Kirsanow, effective December 28, 2007.

The purpose of this delegation of power was simple and transparent.   According to the Board's minutes on that day, this action was done in anticipation "that in the near future [the Board] may for a temporary period have fewer than three Members," because the recess appointment terms for Members

Walsh and Kirsanow were set to expire on December 31, 2007. The Board was of the view that "this action will permit the remaining two Members to issue decisions and orders in unfair labor practice and representation cases after [the] departure of Members Kirsanow and Walsh, because the remaining Members [Liebman and Schaumber] will constitute a quorum of the three-member group [under section 3(b) of the NLRA]." In addition to its own interpretation of the statutory text, the Board relied on the legal analysis set forth in a March 4, 2003 Memorandum Opinion issued by the Office of Legal Counsel of the U.S. Department of Justice. In its Memorandum Opinion, OLC concluded, as did the Board, that "if the Board delegated all of its powers to a group of three members, that group could continue to issue decisions and orders as long as a quorum of two members remained." Quorum Requirements, 2003 WL 24166831 (Mar. 4, 2003).

On December 31, 2007, the recess appointments of Members Walsh and Kirsanow expired. Since January 1, 2008, the Board has functioned with the two remaining members, Liebman and Schaumber, who acted as a two-member quorum of the three-member delegee group created by the Board's December 20, 2007, action. On February 29, 2008, Members Liebman and Schaumber issued a Decision and Order adopting the ALJ's rulings, findings and conclusions, and adopting the ALJ's recommended Order in full (with only inadvertent errors corrected). This Decision and Order was issued under the two members' authority as a two-person quorum of the three-member group designated by the Board. Kirsanow, by that time no longer a member of the Board, did not take part in hearing or resolving this case at all.

Laurel Baye petitions this Court for review of the Board's decision. In so doing, "Laurel Baye does not challenge the merits of the Board's unfair labor practice findings or its

remedy." Rather, Laurel Baye contends that the two members of the Board lacked the power to issue a Decision and Order in this case. The Board cross-petitions for enforcement of its unfair labor practice order.

## II. ANALYSIS

This case concerns the interplay of the delegation, vacancy, and quorum provisions of section 3(b) of the NLRA, and requires us to determine whether, under these provisions, the two-member delegee group consisting of Members Liebman and Schaumber could lawfully issue an order finding that Laurel Baye engaged in unfair labor practices. Laurel Baye challenges both the legitimacy and continuing nature of the Board's delegation. The Board counters that its actions give effect to every provision within section 3(b). Specifically, the Board posits that there is a general quorum requirement of three members, except where powers have been delegated to a group of three, in which case the two-member delegee group quorum provision and the vacancy provision allow the remaining two members of the Board to continue to act as a delegee group.

Laurel Baye argues for the invalidity of the Board's action under two rationales. First, it contends that the Board has no authority to delegate its power to a three-member group that it knows will be acting as a two-member group due to expected term expiration. In Laurel Baye's view, the Board's delegation cannot stand because it is simply a sham. The second formulation of Laurel Baye's argument is that even if the Board could make the initial delegation, that delegation cannot survive the loss of a quorum on the Board itself. Because we find the second formulation of the argument convincing, we pretermit the first.

"A cardinal principle of interpretation requires us to construe a statute 'so that no provision is rendered inoperative or superfluous, void or insignificant.'" *Asiana Airlines v. FAA*, 134 F.3d 393, 398 (D.C. Cir. 1998) (quoting *C.F. Commc'ns Corp. v. FCC*, 128 F.3d 735, 739 (D.C. Cir. 1997)).   The Board's interpretation of section 3(b), however, violates this principle of statutory interpretation by eschewing various portions of the statutory language.  Specifically, the Board's position ignores the requirement that the Board quorum requirement must be satisfied "*at all times*."  29 U.S.C. § 153(b) (emphasis added).  Moreover, it ignores the fact that the Board and delegee group quorum requirements are not mutually exclusive.  The delegee group quorum provision's language does not eliminate the requirement that a quorum of the *Board* is three members.  Rather, it states only that the quorum of any three-member *delegee group* shall be two.  *Id.*  The use of the word "except" is therefore present in the statute only to indicate that the delegee group's ability to act is measured by a different numerical value.  *See id.*  The Board quorum requirement therefore must still be satisfied, regardless of whether the Board's authority is delegated to a group of its members.  Reading the two quorum provisions harmoniously, the result is clear: a three-member Board may delegate its powers to a three-member group, and this delegee group may act with two members so long as the Board quorum requirement is, "at all times," satisfied.  *Id.*  But the Board cannot by delegating its authority circumvent the statutory Board quorum requirement, because this requirement must always be satisfied.

Indeed, if Congress intended a two-member Board to be able to act as if it had a quorum, the existing statutory language would be an unlikely way to express that intention.  The quorum provision clearly requires that a quorum of the Board is, "at all times," three members.  29 U.S.C. § 153(b).  A modifying phrase as unambiguous as this denotes that there is no instance

in which this Board quorum requirement may be disregarded. Contrary to the Board's contentions, Congress did not intend to use the delegee group quorum provision as an exception to the requirement that the Board quorum requirement must be met "at all times." Though the delegee group quorum provision is preceded by the prepositional phrase "except that," *id.*, Congress's use of differing object nouns within the two quorum provisions indicates clearly that each quorum provision is independent from the other. The establishment of a two-member quorum of a subordinate group does not logically require any change in the provision mandating a three-member quorum for the Board as a whole. In fact, it does not seem odd at all that a sub-unit of any body would have a smaller quorum number than the quorum of the body as a whole. Quorums, after all, are usually majorities. A majority of three is smaller than a majority of five. It therefore defies logic as well as the text of the statute to argue, as the Board does, that a Congress which explicitly imposed a requirement for a three-member quorum "at all times" would in the same sentence allow the Board to reduce its operative quorum to two without further congressional authorization. Congress provided unequivocally that a quorum of the Board is three members, and that this requirement must be met at all times. The delegee group quorum provision does not eliminate this requirement.

The strained interpretation by the Board is contrary to basic tenets of agency and corporation law. As the Restatement (Third) of Agency sets forth, an agent's delegated authority terminates when the powers belonging to the entity that bestowed the authority are suspended. Restatement (Third) of Agency § 3.07(4) (2006). An agent's delegated authority is also deemed to cease upon the resignation or termination of the delegating authority. 2 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 504 (2008); *see Emerson v. Fisher*, 246 F. 642, 648 (1st Cir. 1918) (holding that

a corporate treasurer's resignation terminated any authority delegated by the treasurer to other individuals). Moreover, as Fletcher notes, a delegating board of directors's powers are suspended whenever the board's membership falls below a quorum. *See* 2 Fletcher Cyclopedia of the Law of Corporations § 421 ("If there are fewer than the minimum number of directors required by statute, [the remaining directors] cannot act as a board."). In the context of a board-like entity, a delegee's authority therefore ceases the moment that vacancies or disqualifications on the board reduce the board's membership below a quorum. It must be remembered that the delegee committee does not act on its own behalf. The statute confers no authority on such a body; it only permits its creation. The only authority by which the committee can act is that of the Board. If the Board has no authority, it follows that the committee has none. The delegee's authority to act on behalf of the Board therefore ceased the moment the Board's membership dropped below its quorum requirement of three members.

We reach this conclusion despite the Board's contention that this court has permitted other agencies to continue to function with fewer than a majority of their membership positions filled. Specifically, the Board cites to two cases from this court: *Railroad Yardmasters of America v. Harris*, 721 F.2d 1332 (D.C. Cir. 1983), and *Falcon Trading Group, Ltd. v. SEC*, 102 F.3d 579 (D.C. Cir. 1996).

In *Yardmasters*, we held that the two sitting members of the National Mediation Board (NMB) could properly delegate the NMB's powers to one of the members, despite the fact that one of the two delegating members resigned later that day, thereby leaving a single NMB member to conduct the NMB's business. *Yardmasters*, 721 F.2d at 1342-45. The Board argues that our reasoning in *Yardmasters* enables the Board to take action to continue to operate. In *Yardmasters*, we noted that if the NMB

"can use its authority to delegate in order to operate more efficiently, then *a fortiori* the Board can use its authority in order to continue to operate when it otherwise would be disabled." *Id.* at 1340 n.26. Similarly, the Board argues that allowing the Board to act to preserve its continuity would give effect to the language and purpose of the NLRA. After all, the Board contends, the inclusion of the delegation provision was designed to ensure that the Board was able to operate more efficiently. Moreover, the NLRA was designed to prevent "industrial strife." 29 U.S.C. § 151. As a result, the argument goes, the NLRB's reliance on a combination of its delegation, vacancy, and quorum provisions to ensure that it would continue to operate despite upcoming vacancies was consistent with the purpose of the NLRA, and was therefore proper.

We are unmoved. Our reasoning in *Yardmasters* does not apply to this case. In that case, we went to great lengths to note the "narrowness of our holding." *Yardmasters*, 721 F.2d at 1344. We expressly noted that our holding governed only whether the NMB was able to delegate its authority to a single NMB member. *See id.* at 1344-45. Further, we stressed that the holding was not meant to extend to agencies such as the NLRB, in light of the fact that the NLRB was "principally engaged in substantive adjudications [concerning] unfair labor practices [and] enforc[ing] individual rights . . . ." *Id.* at 1345. We conclude that *Yardmasters*' reasoning is limited to its statutory context. Therefore, the principle set forth in *Yardmasters* that an agency board's delegation of power is "not affected by changes in personnel" due to it being "[i]nstitutional" in nature does not apply here. *Id.* at 1343. In response to the dissent's concerns that the court's validation of the NMB's delegation could lead to abuse of power, the *Yardmasters* court specifically stressed the fact that the NMB's functions were entirely unlike the functions of the National Labor Relations Board, which "adjudicate[s] unfair labor practices [and] seek[s] to enforce

individual rights under the Act." *Yardmasters*, 721 F.2d at 1345. We emphasized that "the [NMB's] role is perhaps best illustrated by its critical duty . . . of notifying the President that a labor dispute threatens 'substantially to interrupt interstate commerce to a degree such as to deprive any section of the country of essential transportation service.'" *Id.* (quoting 45 U.S.C. § 160 (1976)). Our reliance on this distinction as a basis for our holding in *Yardmasters* strongly suggests–if not expressly states–that *Yardmasters*' holding was not intended to apply in cases involving the adjudication of unfair labor practices, such as the case before us now.

Likewise, *Falcon Trading* offers no support to the Board. In that case, we approved the SEC's promulgation of a new quorum rule, which stated that the SEC's quorum would equal the number of remaining commissioners if the number of remaining commissioners fell below the normal three-commissioner quorum; we also upheld an SEC opinion issued by a two-member Commission acting pursuant to this quorum provision. *Falcon Trading*, 102 F.3d at 582. We held that, "[*i*]*f not otherwise constrained by statute*, an agency *sufficiently empowered by its enabling legislation* may create its own quorum rule." *Id.* (emphasis added). We approved the SEC's power to determine how many members constituted a quorum because Congress "specifically bestowed [that power] on the Commission." *Id.* Further, we noted that the SEC's quorum determination was lawful because it was "not countermanded elsewhere by Congress, as for example in an explicit statutory quorum provision." *Id.*

This highlights the fundamental problem with the Board's reasoning. The Securities Exchange Commission was sufficiently empowered by its enabling legislation; the Board is not. Indeed, Congress has spelled out precise quorum provisions for the Board. Congress provided that a quorum of the Board is

three members.  The Board does not have three members.  It cannot act.  Though section 3(b) gives the Board power to delegate its authority to a group of members, this authority is necessarily limited by the fact that the delegation authority allows the Board to grant its power only to a group of three or more members.  *See* 29 U.S.C. § 153(b).  The Board's delegation power is also obviously limited by the fact that the Board quorum provision establishes that the power of the Board to act exists when the Board consists of three members. *Id.*  The delegee group's delegated power to act, however, ceases when the Board's membership dips below the Board quorum of three members. *See supra* at pp. 7-9.  It therefore follows that where, as here, a delegee group acts on behalf of the Board, *see id.*, the Board quorum requirement still must be satisfied.

Further, the Board's interpretation is not supported by the text of the vacancy provision.  The vacancy provision states only that "[*a*] vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board." 29 U.S.C. § 153(b) (emphasis added).  One reading of this text would suggest the Board's ability to act is impaired if there is more than one vacancy on the Board.  The Board quorum provision, however, clarifies  that "three members of the Board shall, at all times, constitute a quorum of the Board." *Id.*  A quorum is defined as "[t]he minimum number of members (usu. a majority of all the members) who must be present for a deliberative assembly to legally transact business." Black's Law Dictionary 1284 (8th ed. 2004).  The Board's ability to legally transact business exists only when three or more members are on the Board.  Considering the language of the vacancy and Board quorum provisions in tandem, it is clear that the vacancy provision allows the Board to function fully with at most two vacancies.  This is the maximum number of vacancies that the Board can sustain and still maintain a quorum. This is consistent with the delegation provision's requirement that the Board may

delegate its authority only to groups of three or more members. 29 U.S.C. § 153(b).

After oral argument, the Board called our attention to a new decision, *Northeastern Land Services, Ltd. v. NLRB*, No. 08-1878, 2009 WL 638248 (1st Cir. Mar. 13, 2009). The Board asserts that the First Circuit decided the same issue as the one before us and decided it in favor of the Board. We note that the First Circuit decided the case in terms of the continuing validity of a three-member delegee group after the expiration of the term of one member. The determination of that issue is not necessary to our decision, given that we have determined that the lack of a quorum on the Board as a whole is the determining factor. Concededly, the Board prevailed before the First Circuit on facts parallel to those before us. But the First Circuit did not decide the same issue. In any event, the First Circuit's decisions are not binding precedent upon us. We are bound only by the decisions of our circuit and the Supreme Court. This is in keeping with the Supreme Court's recognition that each court of appeals has a duty to resolve the rules independently of each other. *See United States v. Mendoza*, 464 U.S. 154, 160 (1984) ("Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari." (citing *E.I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 135 n.26 (1977))).

## III. CONCLUSION

Finally, we acknowledge that the case before us presents a close question, and that neither OLC's interpretation nor the Board's desire to continue to function is entirely indefensible. Both were undoubtedly born of a desire to avoid the inconvenient result of having the Board's adjudicatory wheels grind to a halt. Nevertheless, we may not convolute a statutory

scheme to avoid an inconvenient result. Our function as a court is to interpret the statutory scheme as it exists, not as we wish it to be. Any change to the statutory structure must come from the Congress, not the courts. U.S. Const. art. I, § 1. Perhaps a properly constituted Board, or the Congress itself, may also minimize the dislocations engendered by our decision by ratifying or otherwise reinstating the rump panel's previous decisions, including the case before us. *See, e.g.*, *FEC v. Legi-Tech, Inc.*, 75 F.3d 704 (D.C. Cir. 1996) (affirming properly re-constituted FEC Board's ratification remedy for its unconstitutional membership).

In the meantime, however, because we determine that the Board was not properly constituted and it did not have the authority to issue the order before us, we grant the petition of Laurel Baye Healthcare and order that the decision of the NLRB be vacated, and the case remanded for further proceedings before the Board at such time as it may once again consist of sufficient members to constitute a quorum. We also deny the Board's cross-petition for enforcement of its invalid order.

*So ordered.*