*689 Justice Kennedy,
with whom Justice Ginsburg, Justice Breyer, and Justice Sotomayor join, dissenting.
As of the day this ease was argued before the Court, the National Labor Relations Board (Board), constituted as a five-member board, had operated with but two members for more than 26 months. That state of affairs, to say the least, was not ideal. This may be an underlying reason for the Court’s conclusion. Despite the fact that the statute’s plain terms permit a two-member quorum of a properly designated three-member group to issue orders, the Court holds that the two-member quorum lost all authority to act once the third member left the Board. Under the Court’s holding, the Board was unauthorized to resolve the more than 500 cases it addressed during those 26 months in the course of carrying out its responsibility “to remove obstructions to the free flow of commerce” through “the promotion of industrial peace.” NLRB v. Fansteel Metallurgical Corp., 306 U. S. 240, 257 (1939). This result is removed even further from the ideal and from congressional intent, as revealed in the statutory design. So it is hard to make the case that the Court’s interpretation of the statute either furthers its most evident purposes or leads to the more sensible outcome.
Indeed, in my view, the objectives of the statute, which must be to ensure orderly operations when the Board is not at full strength as well as efficient operations when it is, are better respected by a statutory interpretation that dictates a result opposite to the one reached by the Court. And in all events, the outcome of the case is but a check on the accuracy of the textual analysis; and here the text of the statute, which must control, does not support the holding of the Court. These reasons, and those to be further discussed, inform this respectful dissent.
I
The Board, by statute, consists of five members. 29 U. S. C. § 153(a). Section 153(b) provides a mechanism in *690 which the Board can delegate all of its powers to a three-member group. As relevant here, the statute consists of three parts. First, a delegation clause:
“The Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise.”
Then, a vacancy clause:
“A vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board ....”
And finally, immediately following the vacancy clause, are the Board and group quorum provisions:
“[Ajnd three members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum of any group designated pursuant to the first sentence hereof.”
As the Court acknowledges, ante, at 679, the three-member group of Members Liebman, Schaumber, and Kirsa-now were a “group designated pursuant to the first sentence” of § 153(b). As such, a two-member quorum of that group had statutory authorization to issue orders; and that is precisely what Members Liebman and Schaumber did. Because the group was properly designated under § 153(b) and a two-member quorum of the group was authorized to act under the statute’s plain terms, its actions were lawful. See Connecticut Nat. Bank v. Germain, 503 U. S. 249, 253-254 (1992) (“[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others____[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says”).
Nothing in the statute suggests that a delegation to a. three-member group expires when one member’s seat becomes vacant, as the Court holds today. In other contexts, it is settled law that a vacancy in a delegee group does not *691 void the initial delegation.. See Nguyen v. United States, 539 U. S. 69, 82 (2003) (concerning vacancies in three-member panels of the courts of appeals). Any doubt on that point should be resolved by this specific statutory instruction: “A vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board.” § 153(b). Members Liebman and Schaumber were exercising the powers of the Board as its remaining members; yet the Court today holds that the vacancy impaired their right to exercise those powers in hundreds of cases. That conclusion is contrary to the statutory mandate.
By its holding, the Court rejects a straightforward reading that it acknowledges is “textually permissible.” Ante, at 681. It does so because, in its view, it is “structurally implausible.” Ibid. But the only textually permissible reading of § 153(b) authorizes a two-member quorum of a del-egee group to issue orders, as was done here; and in any event there is no structural implausibility in reading the statute according to its plain terms.
II
The Court reads the statute to require a delegee group to maintain three members. Unable to find this requirement in the statute’s text, the Court gives three reasons for its interpretation. Those reasons do not withstand scrutiny.
A
The first reason the Court gives for its interpretation is that reading the statute to require a delegee group to maintain three members “is the only way to harmonize and give meaningful effect to all of the provisions in” § 153(b). Ante, at 680. This is not so. But it should be further noted that the argument advanced by the Court is not that the Government’s interpretation of the statute renders any provision superfluous or without a role to play in the statutory scheme. Instead, the Court surmises that certain provisions would not have “meaningful,” “material,” or “practical” effect, ante, *692 at 680,688. But that is just to say that the Court has determined, in its own judgment, that some provisions should have a greater role than provided by the text of the statute.
The Government’s reading of the statute does not render any clause meaningless. The full Board must have three or more members in order to conduct any business, including delegating its authority to a three-member group, as required under the Board quorum provision. This provision applies “at all times” to the Board acting as a whole. Two members of the Board could not conduct any business unless they were previously designated by the full Board as members of a delegee group with such authority. Any delegation of the Board’s authority must be to at least three members, as required by the delegation clause. Any group to which the Board has properly delegated its authority must have two members present to act, as required by the group quorum provision. This reading gives the delegation clause and each of the quorum provisions independent meaning.
Where two members act as a quorum of a group, the statute (unlike the Court) is indifferent to the reason for the third member’s absence, be it illness, recusal, or vacancy. The Court would hold that two members of a group can act as a quorum so long as the third’s absence is not due to a vacancy; yet the vacancy clause makes it clear that the authority of Board “members” to act shall not be impaired by vacancies. The clause includes all members, including those acting as part of three-member groups.
The Court in effect would rewrite the group quorum provision to say, “two members shall constitute a quorum of any group [unless the third member’s absence is due to a vacancy].” Even if the statute said nothing about vacancies, this would be a misreading of the quorum provision. A “quorum” is the “minimum number of members ... who must be present for a deliberative assembly to legally transact business.” Black’s Law Dictionary 1370 (9th ed. 2009) (hereinafter Black’s). As the Court has made clear in the *693 past, quorum requirements are generally indifferent to the reasons underlying any particular member’s absence. See Nguyen, 539 U. S., at 82.
For instance, the Court has previously discussed a statute governing the delegation of power to three-member panels of the federal courts of appeals. Ibid. That statute provides: “A majority of the number of judges authorized to constitute a court or panel thereof . . . shall constitute a quorum.” 28 U. S. C. § 46(d). While the statute makes no mention of vacancies,. the Court had little trouble concluding that the statute “permits a quorum to proceed to judgment when one member of the panel dies or is disqualified.” Nguyen, supra, at 82. The Court today offers to distinguish Nguyen as being “informed by the longstanding practice of allowing two judges from the initial panel to proceed to judgment in the case of a vacancy.” Ante, at 686. But there was little if any relianee on any such practice in Nguyen. In noting that its conclusion was a matter of “settled law,” the Court relied on the text of the statute and a single case that itself looked directly to the statutory text of § 46(d). Nguyen, supra, at 82 (citing United States v. Allied Stevedoring Corp., 241 F. 2d 925, 927 (CA2 1957) (L. Hand, J.)).
If the group quorum provision leaves any room for doubt that it applies in cases of vacancy, its application is made clearer by the vacancy clause itself. That clause states in unequivocal terms that “[a] vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board.” § 153(b). The Court makes much of the fact that the statute refers to a vacancy in the “Board” rather than in a “group.” But the former category subsumes the latter. That is, the phrase “[a] vacancy in the Board” covers the entire universe of instances in which there may be a vacancy in a group, because all group members are Board members.
The Court counters that the vacancy clause “speaks to the effect of a vacancy in the Board on the authority to exercise *694 the powers of the Board,” ante, at 685, as opposed to a vacancy in a group. But the Court’s abridged restatement of the vacancy clause suffers from a critical imprecision. The Court’s point would be well taken if the vacancy clause stated that “a vacancy in the Board shall not affect the power of the Board to operate.” But the clause instead states that “[a] vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board.” Delegee groups consist of members exercising the powers of the Board. This clause thus instructs that a vacancy in the Board shall not impair the right of members to exercise the Board’s powers, an authority that members of delegee groups possess. But under the Court’s reading, vacancies in the Board will often impair the right of the remaining members to exercise the powers of the Board, notwithstanding the explicit statutory command to the contrary.
In an effort to avoid the mandates of the group quorum provision, as buttressed by the vacancy clause, the Court relies on the delegation clause. The Court reads the clause as requiring a delegee group to maintain three members in order for its authority to remain intact. In my respectful submission, this reading of the statute, in which any vacancy in a delegee group somehow invalidates the delegation itself, has no textual basis. Contrary to the Court’s and petitioner’s assertions, the delegation clause is not rendered unimportant under the Government’s interpretation. The delegation clause establishes what is required for delegation in the first instance, while the vacancy clause and the group quorum provision allow the delegee group to proceed in the event that a member’s term expires or a member resigns.
Congress could have required a delegee group to maintain three members, but it did not do so; instead, it included a vacancy clause that is an explicit rejection of such a requirement. That is no doubt why the Court’s reading has not been adopted by the five Courts of Appeals to have rejected its result. See Teamsters Local Union No. 523 v. NLRB, *695 590 F. 3d 849 (CA10 2009); Narricot Indus., L. P. v. NLRB, 587 F. 3d 654 (CA4 2009); Snell Island SNF LLC v. NLRB, 568 F. 3d 410 (CA2 2009); 564 F. 3d 840 (CA7 2009); Northeastern Land Servs., Ltd. v. NLRB, 560 F. 3d 36 (CA1 2009). While one Court of Appeals reached the same result as the Court, it too did not adopt the Court’s reasoning that a delegee group must maintain three members. Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB, 564 F. 3d 469, 472-473 (CADC 2009) (“[T]his delegee group may act with two members so long as the Board quorum requirement is, ‘at all times,’ satisfied”).
The Court’s reasons for nonetheless reading this requirement into the statutory text bring me to its second point.
B
The Court’s textual arguments in the end reduce to a single objection: The Government’s reading of § 153(b) allows two Board members to act as the full Board, thereby eviscerating the requirement that the Board only operate with a three-member quorum (or as three-member panels). This animates the Court’s second reason for departing from the statutory text, as the Court suggests that had Congress “intended to authorize two members alone to act for the Board on an ongoing basis, it could have said so in straightforward language.” Ante, at 681. But Congress undoubtedly permitted two members to act for the Board: Even under the Court’s interpretation, two members are authorized to exercise the full powers of the Board so long as they are part of a delegee group that has fallen to two members due to any reason other than vacancy. Ante, at 688 (“[T]he group quorum provision still operates to allow any panel to issue a decision by only two members if one member is disqualified”).
The Court’s complaint, then, cannot be that Congress did not intend two members to exercise the powers of the Board; it must be that Congress did not intend to allow two mem *696 bers to do so for protracted periods of time. The Court is likely correct that Congress did not expect a two-member quorum to operate as the Board for extended periods, but unintended consequences are typically the result of unforeseen circumstances. And it should be even more evident that Congress did not intend the Board to cease operating entirely for an extended period of time, as the Court’s interpretation of § 153(b) now ordains. Members Liebman and Schaumber issued more than 500 opinions when they operated as a two-member quorum of a properly designated group:
“Those decisions resolved a wide variety of disputes over union representation and allegations of unfair labor practices, including cases involving employers’ discharges of employees for exercising their statutory rights; disputes over secret ballot elections in which employees voted to select a union representative; protests over employers’ withdrawal of recognition from union representatives designated by employees; refusals by employers or unions to honor their obligation to bargain in good faith; and challenges to the requirement that employees pay union dues as a condition of employment.” Brief for Respondent 6-7 (footnotes omitted).
The Court’s objection, that Congress could have been more explicit if it wanted two members to operate as the Board, is misplaced. There is nothing inconsistent about Congress preferring Board decisions to be made by three members and advancing that preference through statutory requirements, while at the same time providing exceptions for suboptimal circumstances, such as those presented here. Quorum provisions do not express the legislature’s judgment about the optimal number of members that should be present to transact business; they set a floor that, while less than ideal, provides a minimum number of participants necessary to protect *697 “against totally unrepresentative action.” Robert’s Rules of Order § 3, p. 16 (rev. ed. 1970).
One likely reason Congress did not permit the Board to delegate its authority to two-member groups in the first instance is that Congress wanted to avoid two-member groups in the mine run of cases. Congress’ statutory scheme achieved that goal, as the Court’s review of the Board’s historical practices aptly demonstrates. Ante, at 681-683. Congress nonetheless provided for two-member quorums to operate in extraordinary circumstances, where the Board has exercised its discretion to delegate its authority to a particular three-member group, and one member of such a group is unavailable for whatever reason. The Board’s delegation to a three-member group that ultimately dwindled to two was a thoughtful and considerate exercise of its reasonable discretion when it was confronted with two imperfect alternatives.
During the past two years, events have turned what Congress had undoubtedly thought would be an extraordinary circumstance into an ordinary one, through no fault of the Board. That is no reason to dispense with the statutory regime that is prescribed when these circumstances arise, even when they unexpectedly persist.
C
The Court’s final reason for its interpretation is the Board’s longstanding practice of reconstituting panels whenever they drop below three members due to a vacancy. But see Photo-Sonics, Inc. v. NLRB, 678 F. 2d 121, 122-123 (CA9 1982) (upholding decision from a two-member delegee group after third member retired). The commonsense conclusion from this practice, however, is that the Board respects the superiority of three-member groups to two-member quorums of those groups. That the Board reconstitutes its panels to include three members does not demonstrate that a *698 two-member group lacks the authority to act when recompo-sition is not an option.
The Court is mistaken, then, when it suggests that, if two-member quorums were permissible, the Board would have a practice of allowing two-member quorums to persist without reconstituting panels. Persuasive authority shows the contrary to be true. In 2003, the Office of Legal Counsel (OLC) advised that two members can operate as a quorum of a properly designated group, even if the other seats on the Board are vacant. The Board agreed to be bound by that opinion. See Dept, of Justice, OLC, Quorum Requirements, App. to Brief for Respondent la-3a. Six months later, Board Member Acosta resigned. See NLRB Bulletin, Ronald Meisburg Receives Recess Appointment From President Bush To Be NLRB Member (Dec. 29,2003). Despite OLC’s opinion and the Board’s position that two-member quorums could exercise the full powers of the Board, the Board prudently reconstituted each three-member panel on which Member Acosta served before his departure because there were enough members of the Board to do so. Its own prudent actions should not be used as a reason to strip the Board of a statutory power.
And a further instructive history comes from the practices of the original Board, before the 1947 Taft-Hartley Act. The Wagner Act of 1935, 49 Stat. 451, provided for a three-member Board and contained a vacancy provision similar to the one found in § 153(b): “A vacancy in the Board shall not impair the right of the remaining members to exercise all the powers of the Board, and two members of the Board shall, at all times, constitute a quorum.” § 3(b), 49 Stat. 451. Under this statutory grant of authority, from 1935 to 1947 a two-member quorum of the Board operated during three separate periods when the third seat was vacant, issuing nearly 500 two-member decisions during such times. Those two-member Boards issued 3 published decisions in 1936 (reported at 2 N. L. R. B. 198-240); 237 published decisions in *699 1940 (reported at 27 N. L. R. B. 1-1395 and 28 N. L. R. B. 1-115); and 225 published decisions in 1941 (reported at 35 N. L. R. B. 24-1360 and 36 N. L. R. B. 1-45). Brief for Respondent 3, n. 1.
Congress intended to preserve this practice when it enacted the Taft-Hartley Act in 1947. The purpose of the Taft-Hartley amendment was to increase the Board’s efficiency by permitting multiple three-member groups to exercise the full powers of the Board. See S. Rep. No. 105, 80th Cong., 1st Sess., 8 (1947) (“The expansion of the Board . . . would permit it to operate in panels of three, thereby increasing by 100 percent its ability to dispose of cases expeditiously”). In furtherance of that objective, the new statutory language in § 153(b) complements the congressional intent to preserve the ability of two members of the Board to exercise the Board’s full powers, in limited circumstances, by permitting the Board to delegate “any or all” of its powers “to any group of three or more members,” two members of which would constitute a quorum.
D
Petitioner, but not the Court, advances an alternative interpretation of § 153(b) adopted by the United States Court of Appeals for the District of Columbia Circuit. See Brief for Petitioner 16-27; Laurel Baye, 564 F. 3d 469. In petitioner’s view, § 153(b) requires the Board to have a quorum of three members “at all times,” and when the Board’s quorum fell to two members any powers that it had delegated automatically ceased.
This is a misreading of the statute that the Court rightly declines to adopt. Ante, at 684, n. 4. As explained above, that the Board must meet a three-member quorum requirement at all times when it wishes to operate as the full Board does not mean it must maintain three members in order for delegee groups to act. It just means that the quorum requirement for the full Board, operating independently of *700 any delegee group, is fixed at three, as opposed to the various dynamic quorum requirements found elsewhere in the United States Code. See, e. g., 28 U. S. C. § 46(d) (setting the quorum requirements for courts of appeals at “[a] majority of the number of judges authorized to constitute a court or panel thereof”); see also Black’s 1370 (defining “proportional quorum” as: “[a] quorum calculated with reference to some defined or assumed set, usu. either the number of seats (including vacancies) or the number of sitting members (excluding vacancies)”).
Petitioner’s reading ignores the operation of the word “except” in the statute: “[TJhree members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum of any group.” § 153(b).
While the Court does not adopt petitioner’s flawed reading, it should be noted that its failure to decisively reject it calls into question various delegations of authority the Board has made beyond three-member groups. For instance, § 153(d) permits the Board to delegate various powers to its general counsel, but under petitioner’s view the general counsel would have lost all authority the moment the Board fell to two members. See also § 153(b) (permitting Board to delegate certain powers to its regional directors). The Court’s assurances that its opinion “does not cast doubt on the prior delegations of authority to nongroup members,” ante, at 684, n. 4, are cold comfort when it fails to reject petitioner’s view outright.
* * *
It is not optimal for a two-member quorum to exercise the full powers of the Board for an extended period of time. But the desire to avoid that situation cannot justify the Court’s significant revisions to § 153(b): (1) It writes language into the delegation clause, requiring delegee groups to maintain a membership of three, despite the conspicuous absence of this requirement and the statutory rejection of it *701 in the group quorum provision; (2) it excises the word “not” from the vacancy clause, so that a Board vacancy does “impair the right of the remaining members to exercise all of the powers of the Board” in hundreds of cases; (3) it renders the group quorum provision unintelligible, so that its application depends entirely on the reason for the third member’s absence, and applies in all instances except when the absence is due to a vacancy (despite the vacancy clause’s contrary mandate, earlier in the very same sentence).
The Court’s revisions leave the Board defunct for extended periods of time, a result that Congress surely did not intend. The Court’s assurance that its interpretation is designed to give practical effect to the statute should bring it to the opposite result from the one it reaches. For these reasons, I would affirm the judgment of the Court of Appeals.