SRINIVASAN, Circuit Judge,
concurring:
I join the court’s opinion, including its rejection of Mystic’s argument that the Regional Director had no authority to conduct the representation election given the absence of a Board quorum. In rejecting that argument, our opinion relies on the explanation set forth in UC Health v. NLRB, 803 F.3d 669, 2015 WL 5474171 (D.C.Cir.2015), which rejected the same argument in an opinion issued contemporaneously with ours in this case. I fully agree with the conclusion of UC Health as described in our opinion here: that we “must defer to the Board’s reasonable interpretation that the lack of a quorum at the Board does not prevent Regional Directors from continuing to exercise delegated authority.” Ante at 308.
I write separately to note that, with regard to one aspect of the explanation in UC Health for rejecting the Board-quorum argument, I see things a bit differently. In both cases, the employer argues that our prior decision in Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB, 564 F.3d 469 (D.C.Cir.2009), precludes the Board from adopting the interpretation of the quorum statute we now review. I agree with the UC Health majority that Laurel Baye poses no bar to the Board’s reaching that interpretation. My reasons for reaching that conclusion, though, vary in some measure from those of the UC Health majority.
I would rely on the approach set out in National Cable & Telecommunications Ass’n v. Brand X Internet Services, 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005). In Brand X, the Supreme Court established a rule for determining when a prior judicial interpretation of a statute forecloses an agency from adopting a contrary reading. The rule set forth in Brand X governs an agency’s freedom to depart from a prior judicial interpretation regardless of whether that interpretation was set out in a “pre-Chevron judicial decision,” UC Health, slip op. at 7-8, 803 F.3d at 688 (Silberman, J., dissenting), or instead in a post-Chevron judicial decision, as was the case in Brand X itself. See 545 U.S. at 979-80, 125 S.Ct. 2688. In either situation, Brand X establishes that an agency remains free to construe a statute it administers in a manner at odds with the prior judicial interpretation unless the court’s decision purported to define the “only permissible reading” of the statute, id. at 984, 125 S.Ct. 2688 — “the same demanding Chevron step one standard that applies if the court is reviewing the agency’s construction on a blank slate,” id. at 982, 125 S.Ct. 2688. If the court instead articulated only the “best reading” of the statute, the agency retains discretion to implement a contrary interpretation. Id. I believe Laurel Baye is best read to have done the latter.
As a result, while the UC Health majority and dissent disagree over whether *316 Laurel Baye’s statutory holding governs delegations of the Board’s authority to Regional Directors (as the dissent contends) or instead pertains only to delegations to Board sub-groups (as the majority holds), see 29 U.S.C. § 153(b), I view that question to be beside the point. Laurel Baye’s holding, regardless of whether it reaches delegations to Regional Directors, does not purport to adopt the only permissible reading (as opposed to merely the best reading) of the statute. Brand X therefore left the Board room to adopt a contrary reading, which the Board has now done.
Of course, there would be no dispute about how best to understand Laurel Baye if our court had occasion in that case expressly to apply Chevron’s two-step framework. Had we had occasion to do so, and had we resolved the interpretive question at Chevron step one, we would have confirmed that our interpretation was the “only permissible” one. See Brand X, 545 U.S. at 982-83, 125 S.Ct. 2688. But Laurel Baye contains no mention of Chevron, much less any express application of its two-step test. That is presumably because the Board did not seek Chevron deference in Laurel Baye. And insofar as the applicability of Chevron presents no issue of jurisdiction, see Lubow v. Dep’t of State, 783 F.3d 877, 884 (D.C.Cir.2015), we had no obligation to walk through the Chevron framework in our opinion in the absence of a request by the Board to do so. I assume the Laurel Baye court made no express reference to Chevron for that reason.
In saying so, I am in no way “essentially accusing] the Laurel Baye panel of disregarding governing law applying to judicial review of agency statutory interpretations,” ie., Chevron deference. UC Health, slip op. at 7, 803 F.3d at 688 (Silberman, J., dissenting). The point here is not that the Laurel Baye court shirked any requirement to apply the Chevron framework. The point instead is that, because the Board did not claim any entitlement to Chevron deference, the Laurel Baye court presumably felt it had no obligation expressly to march through Chevron’s two steps in its opinion. Regardless of whether, by failing to argue any entitlement to it, an agency can forfeit a claim to Chevron deference, it is fully understandable why the Laurel Baye opinion makes no effort expressly to apply Chevron’s two-step test. Why walk through Chevron’s two-step deference framework in the opinion if the Board made no claim of entitlement to Chevron deference in the first place?
This is all a fairly roundabout way of making what I see as the ultimate point for purposes of determining whether the Board retained freedom under Brand X to disagree with the Laurel Baye court’s interpretation: because Laurel Baye did not explicitly invoke the Chevron framework (understandably, given that the court was not asked to), we simply do not know from the Laurel Baye decision whether its rejection of the Board’s interpretation fell at Chevron step one. Judge Silberman, in his dissent in UC Health, posits that, even though Laurel Baye does not say a word about Chevron, its rejection of the Board’s interpretation must have been at Chevron step one. He suggests that, in the era of Chevron, a reviewing court can never adopt merely a “best reading” of a statute when — as in Laurel Baye — the court is faced with a contrary agency interpretation. Id. at 7-9, 803 F.3d at 688-89.
I disagree.' For instance, what if an agency’s interpretation is ineligible for Chevron treatment because it was issued without the requisite procedures? See United States v. Mead Corp., 533 U.S. 218, 231-32, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). In that event, a reviewing court *317 surely can reject the agency’s interpretation in favor of the court’s “best reading” without necessarily having to decide whether the “best reading” is also the “only permissible” one (or without remanding to the agency). See Christensen v. Harris Cty., 529 U.S. 576, 586-87, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000); Miller v. Clinton, 687 F.3d 1332, 1342, 1352 (D.C.Cir.2012). As we have said in such a situation, “[w]ith Chevron inapplicable,” we “must decide for ourselves the best reading.” Miller, 687 F.3d at 1342 (internal quotation marks omitted); see id. at 1352. If the court then were to reach a “best reading” contrary to the agency’s interpretation, the agency, as Brand X makes clear, could later disagree and issue a new interpretation (which, if adopted pursuant to the requisite procedures, would be entitled to Chevron deference). See Richard J. Pierce, Jr., 1 Administrative Law Treatise § 3.5, at 182 (5th ed.2010). In short, there certainly can be situations in which a reviewing court rejects an agency’s interpretation in favor of the “best reading” (rather than in favor of the “only permissible reading”), in which case the agency would retain leeway under Brand X to disagree.
So where does that leave us here? The question is whether, notwithstanding the Laurel Baye court’s understandable decision to refrain from expressly invoking Chevron’s two-step framework, we somehow know that the court in fact rejected the Board’s interpretation as a step one “only permissible reading” resolution. We do not. Even assuming, arguendo, that the Laurel Baye court was required to entertain Chevron at all despite the Board’s failure to claim any entitlement to Chevron deference (and assuming that the Laurel Baye court believed it was required to do so), we do not know why the court declined to give effect to the agency’s interpretation.
As Judge Silberman suggests, it might have been based on a conclusion that the Board, rather than arriving at an interpretation as a matter of discretion, simply believed its reading to be compelled by. the statute (in which case, for the reasons he argues, the absence of a remand would tend to indicate a step one resolution). UC Health, slip op. at 6, 8, 803 F.3d at 687-88, 688-89 (Silberman, J., dissenting). But perhaps the court instead believed that the Board, as the petitioning company argued, lacked Chevron authority to construe this particular statute in the first place because it “presents a question of power or jurisdiction^]” Brief for Petitioner at 10, Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB, 564 F.3d 469 (D.C.Cir. Nos. 08-1162(L), 08-1214). That argument could have had more purchase before the Supreme Court’s decision in City of Arlington v. FCC, — U.S.-, 133 S.Ct. 1863, — L.Ed.2d- (2013), when this court had held that “the existence of ambiguity is not enough per se to warrant deference to the agency’s interpretation” because the agency may lack delegated authority “to make a deference-worthy interpretation of the statute” at issue. Am. Bar Ass’n v. FTC, 430 F.3d 457, 468-69 (D.C.Cir.2005); see Motion Picture Ass’n of Am., Inc. v. FCC, 309 F.3d 796, 801 (D.C.Cir.2002); see also Nathan Alexander & Jonathan H. Adler, The Rest Is Silence: Chevron Deference, Agency Jurisdiction, and Statutory Silences, 2009 U. Ill. L.Rev. 1497, 1499-1500 (2009) (describing Am. Bar Ass’n as a decision about “agency jurisdictional determinations”). After all, the Board in its brief raised no objection to that argument by the company. If the Laurel Baye court thought Chevron might be inapplicable for that reason, the court would have been free to reject the agency’s interpretation based on a “best reading.” The bottom *318 line is that we cannot be certain from the Laurel Baye opinion that the court issued the equivalent of a Chevron step one “only permissible reading.”
While the Laurel Baye court understandably did not expressly work through Chevron’s two-step framework given the absence of any request by the Board to do so, there is another way in which the Laurel Baye court could have removed any doubt about whether it considered its rejection of the Board’s interpretation to rest on the “only permissible reading” of the statute. Brand X, 545 U.S. at 984, 125 S.Ct. 2688. The court could have said so. Laurel Baye came after Brand X. And post-Brand X, we issue decisions in awareness of the interpretive backdrop against which our opinions construe statutes administered by an agency. Following Brand X’s roadmap, a court could preclude an agency’s adoption of a contrary interpretation by saying expressly that the court’s holding rests on the “only permissible reading” of the statute, id., or by explicitly “hold[ing] that the statute unambiguously requires the court’s construction,” id. at 985, 125 S.Ct. 2688. In the absence of any definitive formulation of that variety, we are in the position of having to parse a prior opinion’s language to divine whether it expressed with adequate clarity the equivalent of a Chevron step one holding — i.e., an “only permissible reading” resolution.
I do not read Laurel Baye to have done so. The opinion stops short of concluding that the statutory terms accommodate only one permissible interpretation concerning whether a Board delegee can continue to act if the Board ceases to maintain a three-member quorum. To be sure, the opinion necessarily holds that such a reading at least presents the best interpretation of the statute. But we did not go further to— and we had no necessary occasion to— decide that the best reading also was the only permissible one. To the contrary, we said that “the case before us presents a close question,” and that the Board’s interpretation was not “entirely indefensible” (which is essentially to say, it was “defensible”). Laurel Baye, 564 F.3d at 476 (emphasis added). Those words suggest something considerably less than a definitive, Chevron step one interpretation.
Of course, we also did not go so far as to say that a contrary reading necessarily would be reasonable. One can certainly locate language in the opinion that might have been used in service of an “only permissible reading” resolution. E.g., id. at 473 (noting that, because “[t]he statute confers no authority on” the delegee and “[t]he only authority by which the [dele-gee] can act is that of the Board,” if “the Board has no authority, it follows that the [delegee] has none”). But when read in the context of an opinion that considered the question to be “close” and a contrary reading to be somewhere in the neighborhood of a “defensible” one, the cited language is no less consistent with a “best reading” holding than with an “only permissible reading” holding. And while Laurel Baye at times invokes terms such as “unequivocal!]” and “clearly” in discussing the statute, it does so only in making the predicate point that — as the plain terms of the statute themselves specify- — the Board must “at all times” satisfy a three-member quorum requirement. Id. (quoting 29 U.S.C. § 153(b)). In my reading, we did not use those sorts of definitive terms in resolving the subsequent question ultimately at issue: whether a delegee appointed by a properly constituted Board can itself continue to act in the event the Board later slips below three members. As to the latter question, I understand our opinion to have reached a “best reading,” not an “only permissible reading.”
*319 The cited language and other such passages, at most, would render it fairly debatable whether Laurel Baye intended to adopt the equivalent of a Chevron step one holding. I would not strain to find a step one resolution in an opinion amenable to a contrary understanding. If anything, I would err on the side of construing a decision to have reached a “best reading” (rather than an “only permissible reading”) resolution.
Mistakenly understanding a prior decision to have adopted a step one interpretation would have significant consequences. In that event, we would erroneously freeze in place our “best reading” of a statute even though Congress, according to the basic assumptions underlying Chevron, would have intended to delegate to an agency primary authority to construe the statute as it sees fit within the scope of its delegation. The result would be one Brand X specifically sought to avoid: “ ‘ossification of large portions of our statutory law,’ by precluding agencies from revising unwise judicial constructions of ambiguous statutes.” 545 U.S. at 983, 125 S.Ct. 2688 (quoting Mead, 533 U.S. at 247, 121 S.Ct. 2164 (Scalia, J., dissenting)).
Now suppose, conversely, that we instead err in favor of perceiving a “best reading” resolution in a prior opinion that in fact intended to go further and establish the “only permissible reading” of a statute (and thus to preclude an agency from adopting a contrary interpretation). In that event, the error would have become salient only because the agency later elected to implement a reading of the statute contrary to our prior interpretation. And the error would be short-lived: Our court (or the Supreme Court), in the process of judicial review, would have the final word on whether the agency’s reading could be squared with the statute. Our review of the Board’s interpretation in this case (and in UC Health) perfectly illustrates the point.
For those reasons, I read Laurel Baye to have decided the best reading of the Board quorum statute, not the only permissible reading, leaving the Board free under Brand X to adopt a contrary interpretation. The Board has done so, and here (and in UC Health) — unlike in Laurel Baye — seeks Chevron deference for its interpretation. For the reasons explained by the UC Health majority, I believe the Board is entitled to that deference.